**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| ROY DOVE, | : | |
| | : | Civil Action No. 06-4940 (FSH) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| MICHELLE RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

---

**APPEARANCES:**

Petitioner <u>pro se</u>
Roy Dove, #301976
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Counsel for Respondents
Lucille M. Rosano
Special Dep. Attorney General
Essex County Courts Building
50 West Market Street
Newark, NJ 07102

**HOCHBERG,** District Judge

Petitioner Roy Dove, a prisoner currently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Michelle Ricci and the Attorney General of New Jersey.

**BACKGROUND**

A.   **Factual Background**

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division").[1]

> At trial, the State produced the following evidence.  On the evening of February 1, 1997, defendant met with the victim, Keith Banks, on South 19th Street in Newark to buy narcotics.  Banks, his sister Rasheeda, his girlfriend Mykia Wilson, and another friend, Nicole "Nicky" Gurley, had been selling drugs in the area for most of the day.

> Several other drug dealers were also in the area that evening.  Two other individuals known as "Kurt" and "Malik," who previously made threats against defendant, were nearby, as well as Tony Brooks and Derrick McWhite, both of whom were involved with narcotics traffic.  Earlier, defendant had attempted to purchase narcotics from Brooks and McWhite, but when they realized that defendant had no money, they refused to sell to defendant, so defendant left the area. Defendant returned later to purchase narcotics from Banks.

> The aforementioned women, Rasheeda, Nicky, and Mykia, were with Banks during his dealings with defendant on that night.  Banks gave defendant eight vials of cocaine, but, according to Mykia, when Banks asked for payment, defendant reached into his pocket, pulled out a knife and stabbed Banks.  A struggle followed between defendant and Banks, who was aided by Rasheeda, Nicky and Mykia.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

2

Soon, however, it became clear to Mykia that Banks was seriously injured.  The women ceased their struggle with defendant and focused on getting Banks to the hospital.  Defendant took the opportunity to run away.  Shortly after arriving at the hospital, Banks died from a stab wound to the chest.

The police questioned Rasheeda, Mykia and Nicky at the hospital.  They described a man with characteristics matching defendant's as the person who stabbed Banks.

Rasheeda left the hospital and returned to the scene of the stabbing, where she found a knife in the area.  She then gave the knife to her mother and sister.  At trial, Rasheeda described the knife as a brown kitchen knife; in a previous statement, she described it as a brown folding knife.  Rasheeda also stated that she either picked up the knife with gloves or with paper that she used as gloves.  Six days later, Rasheeda's older sister, Julia Banks, turned the knife over to the police.  Julia had found the knife in a ziploc bag, which had been placed inside a plastic bag under her bed in the family's apartment.  However, the police lost the knife, and consequently, it was not produced at trial.

Tony Brooks saw defendant a few days after the stabbing and pointed him out to police.  The police then took defendant into custody.  After receiving his Miranda[] rights, the police informed defendant that he was a homicide suspect.  Defendant's response to this was: "Fuck you and your witnesses.  I'll get some horse shit defense attorney to take a plea, so fuck you."  Defendant was then arrested.

See Respondents' Exhibit ("RE") E, Appellate Division Opinion,

dated Oct. 2, 2000, at 3-5 (internal citation omitted).

B.   **Procedural History**

On May 21, 1997, an Essex County Grand Jury returned an

indictment charging defendant with: Count One, knowing or

purposeful murder, contrary to N.J.S.A. 2C:11-3a; Count Two,

3

felony murder, contrary to N.J.S.A. 2C:11-3a; Count Three, first-degree armed robbery, contrary to N.J.S.A. 2C:15-1; Count Four, fourth-degree unlawful possession of a knife, contrary to N.J.S.A. 2C:39-5d; and Count Five, third-degree possession of a knife with the intent to use it unlawfully against the person of another, contrary to N.J.S.A. 2C:39-4d.

A jury trial in the Superior Court of New Jersey, Essex County, took place from April 1 through 7, 1998. Petitioner was found guilty on all counts, except on Count One he was found guilty of the lesser charge of aggravated manslaughter. On May 29, 1998, Petitioner was sentenced to an aggregate term of life in prison, without parole, plus 18-months for Count Four, pursuant to an extended term sentence due to Petitioner's two prior convictions for armed robbery. On October 2, 2000, the Appellate Division affirmed the conviction, but remanded the sentence to merge the 18-month sentence on Count Four with Count Five. On January 18, 2001, the Supreme Court of New Jersey denied certification. Petitioner did not petition the United States Supreme Court for a writ of certiorari.

Petitioner filed a state-court petition for post-conviction relief (PCR) on or about March 14, 2001. The trial court denied relief on November 10, 2003. The Appellate Division affirmed the denial of relief on January 30, 2006. The Supreme Court of New Jersey denied certification on March 30, 2006.

4

This Petition, dated July 3, 2006, followed.  Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), on November 3, 2006.  An Order to Answer was issued and Respondents filed a Response to the Petition on February 20, 2007.

## DISCUSSION

### A.   Petitioner's Claims.

Petitioner asserts the following eight arguments for habeas relief:

I.      The trial court's refusal to instruct the jury on the issue of the state's loss of the murder weapon violated the defendant's right to a fair trial and due process of the law.

II.     The trial court's failure to fully and properly instruct the jury on the issue of how to evaluate the defendant's oral statement, denied the defendant his right to a fair trial and due process of law.

III.    The defendant's conviction for fourth degree possession of a knife under circumstances not manifestly appropriate for lawful use merges with his conviction for possession of the same knife for an unlawful purpose and felony murder.[2]

IV.     The lower court erred in denying the petition since defendant received ineffective assistance of trial counsel.

V.      The lower court erred in denying the petition since defendant received ineffective assistance of appellate counsel.

_____

[2]   The Court notes that the issue set forth in Point III has been resolved by the state courts.  The state courts corrected the sentencing error by merging Count Four into Count Five by amended judgment of conviction dated April 10, 2001.  Thus, this issue is moot and will not be considered in this Opinion.

5

VI.       The lower court erred in failing to conduct an evidentiary hearing on defendant's claims.

VII.     The lower court order denying the petition must be reversed since defendant's claims are not procedurally barred under R. 3:22-5.

VIII.    The lower court order denying the petition must be reversed since defendant's claims are not procedurally barred under R. 3:22-4.

(See Petition for Writ of Habeas Corpus, ¶ 12 and "Memorandum of Law in Support of Petition for Writ of Habeas Corpus").  All issues have been presented to the New Jersey state courts either on direct appeal or in PCR proceedings.

B.    **Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

7

prisoner's case."  Id. at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690 at *12 (E.D. Pa. December 18, 2001).  In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations.  See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing

evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.
2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-
supported and subject to the presumption of correctness is not
unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan,
156 F.3d at 198).

     Furthermore, federal habeas courts ordinarily refrain from
revisiting credibility determinations as "it would be wholly
inappropriate for a federal court to repastinate soil already
thoroughly plowed and delve into the veracity of the witnesses on
habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir.
2001).  A habeas petitioner therefore "must clear a high hurdle
before a federal court will set aside any of the state court's
factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98
(1st Cir. 2001).

     A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers.  See Estelle v. Gamble,
429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520
(1972).  A pro se habeas petition and any supporting submissions
must be construed liberally and with a measure of tolerance.  See
Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v.
Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United
States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert.
denied, 399 U.S. 912 (1970).

C.   **Petitioner's Claims Regarding Jury Instructions (Points I and II).**

1.   Point I

Petitioner argues in Point I that the trial court should have granted defense counsel's request to have the jury instructed pursuant to State v. Peterkin, 226 N.J. Super. 25 (App. Div. 1988), charging that because the State had lost the knife evidence, an inference could be drawn that the evidence may have been favorable for the defense.  The trial court denied the request, stating that Peterkin involved a photographic array, and had no relevance to Petitioner's case.

This claim was examined by the Appellate Division on direct appeal.  The Appellate Division found that Petitioner's reliance on Peterkin was "misplaced."  (RE E at p. 6).  In Peterkin, the police acted in bad faith in neglecting to preserve photographic arrays.  The Appellate Division continued, pointing out:

> Subsequently, in Marshall, our Supreme Court held that where the police failed to preserve and present evidence, but committed no act of bad faith, defendant's due process rights are not violated.  123 N.J. at 109-110.  Marshall essentially adopted the holding of the United States Supreme Court in Arizona v. Youngblood, 488 U.S. 51 (1988).  In Youngblood the Court held that, in the absence of bad faith, the Due Process Clause is not violated by the state's failure in its obligation to preserve potentially exculpatory evidence.
>
> Here, there is no evidence of bad faith on the part of the police.  Thus, neither Marshall nor Peterkin entitled defendant to a special instruction regarding the knife.  Rather, any remedy for police negligence was in the discretion of the trial judge.

(RE E at p. 7)(internal citations omitted).  The Appellate
Division found that even if the trial court erred in not
instructing the jury as requested by Petitioner's counsel, the
error was not "clearly capable of producing an unjust result," as
the knife was not a key piece of evidence in the case.  Rather,
the three eyewitnesses produced by the State were key to the
case.  Even if Petitioner had been able to prove that his
fingerprints were not on the knife, the Appellate Division
explained, "the jury would then have had to weigh that evidence
in the context of the substantial additional evidence of his
guilt."  (RE E at p. 8).  Further, Petitioner's counsel was able
to question the detective about the disappearance of the knife
and the circumstances by which the police took possession of it.
(RE E at p. 8).

    2.  <u>Point II</u>

    In Point II, Petitioner argues that the trial judge did not
fully instruct the jury on how to evaluate Petitioner's alleged
oral statement to the police, in accordance with <u>State v.</u>
<u>Kociolek</u>, 23 N.J. 400, 421 (1957)(requiring the trial court to
instruct the jury to "receive, weigh and consider . . . evidence
[of statements allegedly made by the accused] with caution"
because of the high risk of error, miscalculation, and inaccuracy
of recollection involved with this type of testimony), and the
Model Jury Charge concerning statements by a defendant.

Regarding Petitioner's profanity directed at the police officer who took his statement, the trial court charged:

> Now, there is for your consideration in this case a certain oral statement alleged to have been made by the defendant. It is your function to determine whether or not that statement was actually made by the defendant, and if made, whether such statement or any portion of it is credible.
>
> In considering whether or not that statement allegedly made by him is credible, you should take into consideration the circumstances and the facts surrounding the giving of that statement as well as all other evidence in this case. If, after a consideration of all these factors you determine that the statement was not actually made, or that his alleged statement is not credible, you must disregard the statement completely.
>
> If you find, however, the statement was made, and that part or all of it is credible, you may give such weight to that portion of the statement you found to be truthful and credible as you deem it should be according to your deliberations.

(Trial Transcript, dated April 6, 1998, pp. 84-85).

The Appellate Division examined this claim on direct appeal and found:

> The court did not specifically inform the jury as to the possibility of inaccurate recall on the part of the listener as contemplated by Kociolek. Nevertheless, even "failure to give the charge is not reversible error per se." Only if the failure to give the Kociolek charge is capable of producing an unjust result will it constitute plain error.
>
> * * *
>
> Here, there was no plain error. The court's instruction was sufficient to permit the jury to reasonably evaluate defendant's alleged statement. Further, had the full jury charge been given, considering the vulgar language used by defendant, we

have no doubt that it would not have inured to defendant's benefit.

(RE E at pp. 9-10)(internal citations omitted).

   3.   Federal Law Regarding Jury Charge Claims

   Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (internal citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it generally is subject to "harmless error" analysis. See Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)); Fry v. Pliler, 127 S. Ct. 2321 (2007). In evaluating a challenged instruction:

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

In this case, the jury charges did not wrongly describe the burden of proof.  Nor did the charges implicate due process concerns.  The state courts did not find any error under state law with the charges, and this Court cannot ascertain any error

14

that would rise to the level of a constitutional deprivation.

Here, a review of the record and the jury charge reveals that Petitioner has not demonstrated that his entire trial was so prejudiced by the jury charges as to violate the principles of fundamental fairness and due process.  Petitioner's counsel spent a great deal of time in cross-examination and in summation attempting to pick apart the State's case, and reveal inconsistencies regarding eyewitness testimony, the weapon, and the investigation of this matter by police.  Nonetheless, there was sufficient evidence against Petitioner in the form of eyewitness testimony to justify his conviction.  Petitioner's conviction was based on a credibility determination by the jury, who chose to believe the State's witnesses.  Thus, Petitioner's conviction was neither fundamentally unfair, nor violated due process.

Additionally, the state courts relied on Arizona v. Youngblood, 488 U.S. 51, 58 (1988)(holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"), clearly established federal law, in the decisions regarding Point I.

Therefore, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  These grounds for a writ of habeas corpus, must therefore be denied.

**D.    Petitioner's Claims Regarding Ineffective Assistance of Counsel (Points IV and V).**

1.    The _Strickland_ standard

To begin, the "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering

all the circumstances." Id.  The Supreme Court further
explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.
1020 (1996).

If able to demonstrate deficient performance by counsel, the
petitioner must also show that counsel's substandard performance
actually prejudiced his defense.  See Strickland, 466 U.S. at
687.  Prejudice is shown if "there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  Id. at 694.  The reviewing court must evaluate the
effect of any errors in light of the totality of the evidence.

17

See id. at 695-96.   Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.   See id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

"[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997); Lewis v. Mazurkiewicz, 915 F.2d 106, 111 (3d Cir. 1990)(counsel has a duty to investigate or to make a reasonable decision that makes particular investigations unnecessary).   When assessing an ineffectiveness claim based on failure to investigate, a court must assess the decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); see also Duncan v. Morton, 256 F.3d 189, 201 (3d Cir.), cert. denied, 534 U.S. 919 (2001).   "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 691-92.   Even if counsel was deficient in his decision not to investigate, a petitioner must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different.   See Lewis, 915 F.2d at 115.

18

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  See Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865 at *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir.), cert. dismissed, 527 U.S. 1050 (1999).

19

2.   <u>Petitioner's Claims</u>

In Ground IV, Petitioner argues that his trial counsel was ineffective for the following reasons:

- Trial counsel did not request that the jury be excused or that the jurors be questioned after it was revealed that one juror, after being sworn in, recalled that the decedent was a former boyfriend.  During defense counsel's opening, one juror appeared in distress.  The juror had recalled that the victim was a former boyfriend.  In private, the juror relayed to the judge and attorneys that she had not told any members of the jury of the fact that she knew the victim.

- Trial counsel did not request that a mistrial be declared after the State provided information with regard to the murder weapon for the first time at trial.  Shortly after the close of the State's case, it asked to reopen its case and present the testimony of Julia Banks concerning the knife.  Petitioner argues that counsel was ineffective for not requesting a mistrial under these circumstances because of the prejudice to his case from the loss of the weapon.

- Trial counsel did not object to testimony about the knife that could not be produced and could not be linked to the crime.  Further, Petitioner's counsel based certain strategies and cross-examinations on the fact that there was no weapon found.  The testimony concerning the knife was inconsistent.  Trial counsel was ineffective for failing to object to the testimony about the knife.

- Trial counsel did not move for forensic testing on the cap allegedly found at the scene and allegedly worn by the perpetrator.  The State did not perform any forensic testing on the cap, and trial counsel was ineffective for failing to request such testing.

- Trial counsel did not object to the testimony of Tyrone Brooks as prejudicial and speculative.  Brooks was the individual who several days after the incident, identified Petitioner to the police.  Brooks testimony was prejudicial to the defense because it concerned conjecture about Petitioner's intentions to rob for drugs because he had no money.

- Trial counsel did not ask any of the witnesses to confirm Brooks' whereabouts at the time of the incident.  Trial

20

counsel failed to ask Nicky Gurley if she had been warned by
Brooks that Petitioner tried to scam Brooks and his drug
dealing partner, or even if she saw Brooks that night.

- Trial counsel did not ask the State's witnesses if they had
  been charged with the drug offenses to which they were
  admitting.  Petitioner argues that if the witnesses were
  given immunity by the State, it would have been relevant to
  the credibility of their testimony, but trial counsel
  ignored the issue.

(Petitioner's "Memorandum of Law In Support of Writ of Habeas

Corpus").

In Point V of his Petition, Petitioner argues that appellate

counsel should have raised these issues in the brief on direct

appeal.

3.   State court decisions

Petitioner raised these argument in his PCR petition.  In

its written opinion, dated November 10, 2003, the PCR court found

that Petitioner had the benefit of effective counsel.  (RE J).

The PCR court, citing Strickland, found:

> First, not requesting that the entire jury be
> excused after it was revealed that one juror had a past
> relationship with the decedent was not in error.  The
> juror did not convey the past relationship to any other
> jurors and promptly notified the court.  The juror was
> excused and the remaining jurors told that she had
> taken sick.  Arguably, a new jury could have produced a
> different result, however, maintaining the original
> jury and replacing the compromised juror did not
> prejudice the Defendant in any measurable way.
>
> * * *
>
> Second, Defendant mistakenly argues that trial
> counsel was ineffective for failing to object to the
> use of Julia Banks' testimony. . . .

Here, the testimonial evidence admitted regarding the knife was not cause for a new trial.  The Appellate Division properly dealt with the issue of the knife. ... Rule 3:22-5 provides that a prior adjudication upon the merits of any ground of relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding . . . .

In order to be entitled to a new trial, a defendant must show that the evidence is material, was not reasonably discoverable prior to trial, and probably would change the jury's verdict.  Thus, trial counsel satisfies the objective standard of reasonableness.  Admitting the evidence was not erroneous as the evidence was relevant and material to the issues. ...

Third, Defendant avers that trial counsel failed to effectively represent him by not objecting to testimony about the knife that could not be produced or linked to the crime.  Counsel during trial asked the court to charge the jury with a specific instruction regarding the alleged murder weapon, its mishandling, and ultimate loss while in possession of the state.  Although this charge was not given, its request demonstrates that counsel did in fact object. ...

Fourth, not moving for forensic testing on the cap allegedly found at the scene and allegedly worn by the perpetrator was not in error. ... <u>Cann</u> held that ineffective counsel arguments based upon the failure to test for DNA evidence are not suited for Post Conviction Relief applications and that such applications should be made to the trial judge.

Fifth, Sixth, and Seventh points raised argued that the Defendant maintains that the testimony of Tyrone Brooks was prejudicial and speculative, that other witnesses should have been asked to verify Brooks' presence at the time of the incident, and that it was error to not ask the witnesses that had admitted to drug offenses if they had been charged.  Each of these allegations, individually and in sum, does not demonstrate ineffective assistance of counsel. ...

* * *

The Petitioner's argument, even in the aggregate, fails to establish by a preponderance of the evidence

22

that even if each argument Petitioner proffers was
successful, the outcome would have been different.

     The sum of Petitioner's PCR claims are
insufficient under <u>Strickland</u> to cause this court to
fashion a remedy.

(RE J, at pp. 7-10).

    The Appellate Division reviewed the claims and concluded
that the "arguments are without sufficient merit to warrant
discussion in a written opinion."  The Appellate Division also
"affirm[ed] substantially for the reasons expressed by [the PCR
judge] in his November 10, 2003 opinion."  (RE N at p. 4).

    4.  <u>Analysis</u>

    Petitioner has demonstrated neither that counsel's
performance was deficient, nor that the results of the trial
would have been different had the attorney acted as Petitioner
now suggests.  A review of the trial transcripts reveals that
Petitioner's counsel assertively and sufficiently defended
Petitioner.

    With regard to the jury issue, this Court agrees with the
state courts that counsel did not act deficiently by not asking
for a new jury after one juror realized she had dated the victim.
The incident occurred soon after the trial started, during
defense counsel's opening statement.  After questioning the juror
outside of the presence of the jury and discovering that the
juror had not told any of the other jurors of her knowledge of
the victim, the judge excused her and told the other jurors that

she had taken ill.  The judge asked defense counsel if he had an objection, to which he replied no.  Counsel's opening statement continued immediately.  See Transcript, dated April 1, 1998, at pp. 36-38.  This Court can ascertain no possible deficiency in counsel's failure to request a new jury.  There was no reason to do so, considering that the other jurors had no knowledge of what had taken place.  Additionally, Petitioner has not demonstrated that the result of his trial would have been different had a new jury been chosen.

Next, with regard to the knife evidence and testimony, this Court finds, first, that counsel was not deficient.  Second, even if counsel was deficient, Petitioner has not demonstrated that the result of his trial would have been different had counsel objected to the testimony about the knife or requested a mistrial.  The State's case was built on the eyewitness testimony.  Counsel was able to cross-examine the witnesses who testified concerning the knife and point out inconsistencies and problems in investigating the case.  The jury was aware that the knife was lost and that testing had not been done on the knife. It is possible that counsel strategized that his cross-examination of the "knife witnesses" would help Petitioner's case in that it would show that the police work and investigation in the case were "shoddy."  In the end, the jury weighed the testimony of the eyewitnesses and the witnesses who testified

24

about the knife, and decided to find Petitioner guilty.  This Court finds that the eyewitness testimony was sufficient to convict Petitioner, even had the State produced no testimony about the knife.

Moreover, with regard to Petitioner's claim regarding the cap, this Court agrees with the state courts that testing on the cap was unnecessary and would not have changed the result of Petitioner's trial, except perhaps, to the detriment of Petitioner if his DNA was found on the cap.  If testing had been done and Petitioner's DNA was not found on the cap, that would not necessarily help Petitioner's case, especially in light of the multiple eyewitnesses.

Petitioner's arguments that Brooks' testimony should have been objected to and counsel's failure to inquire of witnesses of Brooks' whereabouts during the incident do not demonstrate deficient performance.  A review of Brooks' testimony reveals that he was a drug dealer who was incarcerated on drug charges at the time he testified.  Counsel cross-examined Brooks, attempting to point out inconsistencies in his statements and display to the jury the Brooks was an incredible drug dealer whose testimony should not be given much, if any, weight.  During summation, counsel noted that Brooks was a drug dealer turned "good Samaritan" who "told you a whole story" about Petitioner and pointed him out to police.  Counsel told the jury that Brooks'

"bosses" had already threatened the victim and inferred that Brooks was protecting his bosses by pointing out Petitioner to the police.  See Transcript dated April 6, 1998, at pp. 32-34. Thus, it is clear that counsel's line of questioning and handling of Brooks' involvement in the incident was a matter of trial strategy.

With regard to Petitioner's claim that counsel was ineffective for not inquiring about whether or not the eyewitnesses were granted immunity for their testimony, this Court finds that counsel was not deficient.  Counsel thoroughly examined the witnesses involved in the incident about the fact that they were selling drugs and smoking cocaine on the date of the incident.  See Transcript dated April 1, 1998, at pp. 60-62; Transcript dated April 2, 1998, at pp. 66-70.  Counsel also cross-examined Rasheeda about the fact that Brooks' "bosses" had made threats against the victim.  See Transcript dated April 1, 1998 at p. 125.  Thus, counsel attempted to demonstrate that the witnesses were incredible due to their drug dealing and using. Counsel's line of questioning with regard to these witnesses was sound trial strategy.

Finally, appellate counsel cannot be found to be ineffective for failing to raise these issues on direct appeal, as the claims are without merit.

Further, as the state courts applied the correct <u>Strickland</u> standard to Petitioner's claims and reasonably applied the facts, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  These grounds for a writ of habeas corpus, are therefore denied.

**E.   Petitioner's Claims Regarding Evidentiary Hearing (Point VI) and Procedural Default Rulings (Points VII and VIII).**

In Point VI, Petitioner argues that the lower court erred in denying his PCR motion without first conducting an evidentiary hearing.  Petitioner concedes that these hearings are discretionary, but believes that the circumstances of his case warranted such a hearing on the issue of whether his counsel was ineffective.

Petitioner argues in Point VII that the claims regarding knife evidence in Petitioner's PCR petition were of such substantial import that the bar against raising issues on PCR that were raised in direct appeal should have been relaxed.  In Point VIII, Petitioner argues that his PCR claim that trial counsel should have raised an alibi defense at trial likewise should not have been barred, because he was attempting to raise a

claim of ineffective assistance of counsel, as opposed to a claim he could have previously raised on direct appeal.

Errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief.  See, e.g., Ferguson v. State, 1996 WL 1056727 (D. Del. 1996) and cases cited therein. Furthermore, as a general rule, matters of state law and rules of procedure and evidence are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Federal courts afford the states deference in determinations regarding evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986)("we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted").  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn,

120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), <u>cert.</u>
<u>denied</u>, 522 U.S. 1109 (1998).

Here, it may be construed that Petitioner is asserting that
the PCR court's denial of an evidentiary hearing violated due
process.  Thus, the appropriate inquiry is "whether the claimed
error of law is a fundamental defect which inherently results in
a complete miscarriage of justice or in an omission inconsistent
with the rudimentary demands of fair procedure."  <u>Hutchins v.</u>
<u>Hundley</u>, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(citing
<u>United States v. De Luca</u>, 889 F.2d 503, 506 (3d Cir. 1989), <u>cert.</u>
<u>denied</u>, 496 U.S. 939 (1990))(other citations omitted).  The
Supreme Court has recently held that in § 2254 proceedings, "a
court must assess the prejudicial impact of constitutional error
in a state-court criminal trial under the 'substantial and
injurious effect' standard . . . ."  <u>Fry v. Pliler</u>, 127 S. Ct.
2321, 2328 (2007)(citing <u>Brecht v. Abrahamson</u>, 507 U.S. 629
(1993)).

In this case, a careful review of the PCR proceedings and
the state court rulings reveal that Petitioner failed to
establish a <u>prima</u> <u>facie</u> case of ineffective assistance of counsel
that would have allowed the state court to grant an evidentiary
hearing.  Furthermore, the record plainly reveals that counsel
was not ineffective (see this Opinion, Section D, *supra*).
Moreover, the PCR court's ruling regarding procedural bars on

certain claims in Petitioner's PCR petition is sound, and this Court will not, and cannot, disturb those rulings.  These were decisions concerning state law made by the state courts; assuming, *arguendo*, that the state courts misapplied their own laws, the Court finds that the state PCR court committed no error of a constitutional dimension and that Petitioner's due process rights were not violated by these rulings.

Thus, there is no showing that the state court determination in denying the evidentiary hearing "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Therefore, these claims for habeas relief are denied for failure to show deprivation of a federal constitutional right.

### CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree

30

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  An appropriate Order accompanies this Opinion.


                              /s/ Faith S. Hochberg
                         United States District Judge

Dated:  August 21, 2007

31